UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW JOHN, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AM RETAIL GROUP, INC., a Delaware Corporation, dba WILSONS LEATHER, and Does 1-100, inclusive,<br><br>Defendants. | Case No.: 17cv727-JAH (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

## **INTRODUCTION**

Pending before the Court is Defendant Wilson's Leather's ("Defendant" or Wilson's Leather") Motion to Dismiss Plaintiff Matthew John's ("Plaintiff") First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. No. 8]. Defendant also moves to dismiss the complaint for a lack of standing pursuant to Rule 12(b)(1). Id. After

1

a careful review of the pleadings filed by both parties, and for the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

On or about April 16, 2016, Plaintiff entered the Wilsons Leather Retail located at 5620 Paseo del Norte in Carlsbad, California. See Doc. No. 7, ¶16. Upon entering, Plaintiff immediately observed signs that hung above each rack of merchandise, advertising both a "Ticket" and "Sale" price. Id. Plaintiff proceeded to the wallet kiosk in the store and selected a black Wilsons Leather brand, trifold wallet. Id. Next to the wallet was a sign which advertised the wallet as having a "Ticket" price of $60.00 and a "Sale" price of $23.99. Id. Plaintiff alleges that he relied on this "fraudulent discount pricing scheme" believing he was receiving a good deal by saving close to 60% discount off the "Ticket" price of the wallet. Id. Plaintiff further alleges that an investigation conducted by his attorney revealed that the particular wallet he purchased was not offered for sale at the "Ticket" price of $60.00 at any store in California, within ninety days before Plaintiff's purchase. Id. at ¶ 17. As a result, Plaintiff alleges that he relied on this "sham discount," and had he known the discount was false he would not have purchased the wallet. Id.

Additionally, Plaintiff further alleges his attorney's investigation revealed identical and uniform "fraudulent pricing schemes" being used at other Wilsons Leather retail outlet stores. Id. at ¶ 29. For that reason, Plaintiff contends all consumers were subjected to the identical pricing scheme and suffered identical harm regardless of the product purchased. Id. Plaintiff seeks to bring this cause as a class action on behalf of himself and all other similarly situated consumers who purchased one or more Wilsons Leather brand items offered at a discounted "Sale" price from Defendant's retail outlet stores. Id. ¶¶ 40–52.[1]

---

[1] Plaintiff acknowledges and alleges that beginning in 2016, Defendant stopped using "Ticket" price on their in-store signage and began using "Comparable Value" price instead. See Doc. No. 7, ¶ 39. Plaintiff contends this term is equally misleading. Id.

2

On June 15, 2017, Plaintiff filed the operative first amended complaint ("FAC"). [Doc. No. 7]. In his FAC, Plaintiff asserts violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), Consumer Legal Remedies Act ("CLRA"), as well as a claim for Unjust Enrichment. On June 29, 2017, Defendant filed a Motion to Dismiss Plaintiff's FAC, wherein Defendant attacks Plaintiff's standing to bring his claims and argues Plaintiff fails to state a claim with sufficient particularity. See Doc. No. 8. Furthermore, Defendant requests the Court dismiss Plaintiff's Equitable Relief claims because he has an adequate remedy at law. Id.

# LEGAL STANDARD

## I. Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter. The federal court is one of limited jurisdiction. See Gould v. Mutual Life Ins. Co. v. New York, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. See Steel Co. v. Citizens for a Better Environ., 523 U.S. 83, 95 (1998). When considering a Rule 12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. See Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).

### a. Standing

Standing under Article III pertains to the Court's subject matter jurisdiction and therefore is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). A necessary element of Article III's "case" or "controversy" requirement is that a litigant

must have "'standing' to challenge the action sought to be adjudicated in the lawsuit." Valley Forge College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1152 (9th Cir. 2000).

The "irreducible constitutional minimum" of Article III standing has three elements. LSO, 205 F.3d at 1152 (internal quotations omitted). First, plaintiff must have suffered "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). Second, plaintiff must show a causal connection between the injury and the conduct complained of; *i.e.*, "the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Id. (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976)) (alterations in original). Third, it must be "likely," and not merely "speculative," that the plaintiff's injury will be redressed by a favorable decision. Id. at 561. "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561 (internal citations omitted).

## II. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss for failure to state a claim for relief. Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, the plaintiff is required to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). A claim is facially plausible

when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the reviewing court must assume the truth of all factual allegations and construe them in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557).

### III. Federal Rule of Civil Procedure 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure, requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under Ninth Circuit case law, Rule 9(b) imposes two distinct requirements on complaints alleging fraud. First, the basic notice requirements of Rule 9(b) require complaints pleading fraud to "state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994); see also Vess v. Ciba-Geigy Corp., U.S.A., 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted) (stating that a plaintiff must set forth the "who, what, when, where and how" of the alleged misconduct). Second, Rule 9(b) requires that the complaint "set forth an explanation as to why the statement or omission complained of was false or misleading." Yourish v. California Amplifier, 191 F.3d 983, 993 (9th Cir. 1999) (citation and quotation omitted).

5

# DISCUSSION

As briefly discussed above, Defendant makes several arguments in support of its Motion to Dismiss. First, Defendant argues Plaintiff lacks standing to bring claims on behalf of consumers who purchased items other than the wallet purchased by Plaintiff. See Doc. No. 8, pg. 15–18. Next, Defendant argues that Plaintiff lacks standing on any claims for injunctive relief because there is no risk Plaintiff will ever again be "deceived" by Plaintiff's pricing practices. Id. at pgs. 13–15. Finally, Defendant contends Plaintiff's FAC fails to satisfy Rule 9(b) pleading standards, and fails to state a claim for Restitution and Unjust Enrichment. Id. at pg. 18–21. These arguments will be discussed in turn.

## I. Plaintiff standing to bring claims for items which he did not purchase

Defendant contends that Plaintiff lacks standing to bring claims "based on products he did not purchase or advertisements he did not rely upon." Doc. No. 8, pg. 16. Defendant further asserts that Plaintiff lacks standing to bring claims on behalf of such a "broad" range of customers, who potentially purchased different products and relied upon different signage. Defendant argues that numerous courts in the Ninth Circuit, including this Court, have previously adopted a "bright line rule" which categorically denies named plaintiffs in a putative class action from bringing claims based on products they never purchased or advertisements they never relied upon. Id. at pg. 16. (citing Nunez v. Saks Inc., 2017 WL 1184058 (S.D. Cal. Mar. 22, 2017) (Houston, J.); see also Johns v. Bayer Corp., 2010 WL 476688 (S.D. Cal. Feb. 9, 2010).

It should be noted that "there is 'no controlling [Ninth Circuit] authority' on whether a plaintiff in a class action has standing to assert claims based on products he did not purchase." Morales v. Unilever U.S., Inc., 2014 WL 1389613, at *4 (E.D. Cal. Apr. 9, 2014) (quoting Miller v. Ghirardelli Chocolate Co., 912 F.Supp.2d 861, 868 (N.D.Cal.2012). As of the issuance of this order, the Court is confident that no "bright line rule" exists in this Circuit. Furthermore, the cases cited by Defendant are inapposite and distinguishable from the case at bar, particularly this Court's decision in Nunez v. Saks Inc., 2017 WL 1184058.

Nunez involves similar factual allegations as this case, wherein the plaintiff purchased a pair of men's shoes from a Saks Fifth Avenue OFF 5th store "valued by [Saks] at $145.00 but sold at a price tag of $79.99." Nunez, 2017 WL 1184058, at *1. The plaintiff similarly alleged that "he believed he was receiving a significantly higher valued pair of shoes for a lower price" and "would not have purchased the shoes if he did not believe he was receiving significant savings." Id. The Nunez plaintiff sought to represent all individuals who purchased Saks Fifth Avenue labeled product from OFF 5th stores after being exposed to "material from Sak's marketing campaigns (including print, in-store, or online advertisements)." Id. at *4. In dismissing the complaint for lack of standing, this Court held that, "[p]laintiff cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon." Id. at *5. Defendants contend this reasoning should extend to the present case because it involves nearly identical claims being brought on products Plaintiff has never purchased. See Doc. No. 8, pg. 18.

The Court disagrees with Defendant's broad characterization of its Nunez ruling. The primary rationale for dismissal, and the distinguishing factor between Nunez and the present case, was that the Nunez plaintiff sought to bring claims for a wide range of deceptive advertising–print, in-store, and online–yet failed to allege his own personal exposure to that misleading advertising, even for the shoes that he purchased. Nunez, 2017 WL 1184058, at *5. Here, the deceptive advertising alleged by Plaintiff is far less comprehensive, only including Defendant's in store signage that purported to offer a substantial discount off of the "Ticket" price. Additionally, and importantly in terms of a motion to dismiss, Plaintiff actually alleged that he was exposed to the deceptive advertising and affirmatively relied on such when making his purchase decision. See Doc. No. 7, ¶¶ 16–17. These allegations, and the specificity with which they are plead, are sufficient to distinguish this case from Nunez.

As noted in Miller, the "majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class

7

17cv727-JAH (BGS)

members based on products he or she did not purchase *so long as the products and alleged misrepresentations are substantially similar*." Miller, 912 F. Supp. 2d 861, 869. (emphasis added) (citing Astiana v. Dreyer's Grand Ice Cream, Inc., 2012 WL 2990766, at *11 (N.D.Cal. July 20, 2012) (noting that in most reasoned opinions, "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased"); see also Anderson v. Jamba Juice, 888 F.Supp.2d 1000, 1005–06 (N.D.Cal.2012) (relying on Astiana for the same proposition). In conducting this inquiry, courts have considered whether "the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." Morales v. Unilever U.S., Inc., 2014 WL 1389613, at *4 (E.D. Cal. Apr. 9, 2014) (quoting Wilson v. Frito–Lay N. Am., Inc., 961 F.Supp.2d 1134, 1141 (N.D.Cal.2013)).

Recently, there has been a string of courts in this district who have addressed standing of non-purchased items based solely on similarities of the alleged price misrepresentations. First, in Branca v. Nordstrom, Inc., the plaintiff alleged that defendant's price tags were misleading, particularly because they listed a "Compare At" price and then directly below listed a significantly reduced price. Branca v. Nordstrom, Inc., 2015 WL 10436858, at *1 (S.D. Cal. Oct. 9, 2015). Because the plaintiff was challenging the "same basic mislabeling practice" regardless of the type of product, the court found that the plaintiff had standing to sue on behalf of purchasers of other Nordstrom Rack items. Id. The Branca court reasoned:

> Here, Plaintiff does not allege that his claims depend on what type of product a consumer purchased from Nordstrom Rack; it is immaterial for the purposes of his claims whether one purchased a pair of shoes versus a hat, so long as the item bore a "Compare At" tag. His allegations do not relate to the exact prices, percentages of savings listed on the tags, or specific characteristics of the underlying products, which would vary by product. Rather, his claims relate to the consistent format of the tags, *i.e., **the juxtaposition of two prices, one higher than the other,*** the term "Compare At" and a percentage, labeled "% Savings."

8

Id. at *5 (emphasis added).

In Azimpour v. Sears, Roebuck & Co., a similar pricing "scheme" was alleged, where the plaintiff purchased a pillow which displayed pricing information indicating the pillow's "regular" price was $19.99, but was being offered at a "sale" price of $9.99. Azimpour v. Sears, Roebuck & Co., 2017 WL 1496255, at *1 (S.D. Cal. Apr. 26, 2017). The court found plaintiff had standing to sue on behalf of purchasers of other Sears products because ultimately the "[p]laintiff is challenging the pricing scheme, not the product." Id. at *5. ("This case is not about a pillow–it is about a price tag."). Most recently in Dennis v. Ralph Lauren Corp., 2017 WL 3732103 (S.D. Cal. Aug. 29, 2017), the court addressed analogous facts and allegations. The plaintiff alleged Ralph Lauren stores used price tags which represented a "Value Was" price and an "Our Price" price. Id. at *1. The court found that the "plaintiff [] demonstrated sufficient similarities in [Ralph Lauren's] alleged pricing scheme to avoid dismissal of any claims at this stage of the proceedings." Id. at *8. The court further held, "[Ralph Lauren's] contentions regarding the differences in purchases and advertisements are best addressed at the class certification stage rather than the motion to dismiss stage." Id.

Just as in Dennis v. Ralph Lauren Corp., other district courts have held that an inquiry on whether a named plaintiff can assert claims based on products he did not purchase is one more appropriate in the class certification stage of litigation, rather than a motion to dismiss. "District courts in California routinely hold that the issue of whether a class representative 'may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.'" Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 530–31 (C.D. Cal. 2011) (citing Greenwood v. CompuCredit Corp., 2010 WL 4807095, at *3 (N.D.Cal. Nov. 19, 2010); Arevalo v. Bank of Am. Corp., 850 F.Supp.2d 1008 (N.D.Cal. Mar. 29, 2011)); See also 7AA Wright et al., Federal Practice and Procedure (3d 2005) § 1785.1.

1  Here, Defendant argues Plaintiff does not have standing to bring claims on behalf of
2  a broad range of consumers who purchased different products, at different prices, and
3  accompanied by different signage. See Doc. No. 8, pg. 15. However, the vast majority of
4  cases cited by Defendant in support of this proposition, involve claims where the
5  misrepresentation or dispute revolve around the product itself, which is not at issue here.
6  Just as was held in <u>Azimpour</u>, this case is not about a [wallet]–it is about a price tag. The
7  Court is persuaded by the <u>Branca</u>, <u>Azimpour</u>, and <u>Dennis</u> decisions, and thus finds that
8  Plaintiff has standing to sue on behalf of purchasers of other Wilsons Leather products with
9  in store signage reflecting both a "Ticket" and "Sale" price. Defendant's concerns
10 regarding the differences in the signage–such as their size, font, or placement– are best
11 addressed at the class certification stage. Accordingly, this portion of Defendant's Motion
12 to Dismiss is **DENIED**.

### II. <u>Dismissal of Equitable Relief claims</u>

14 Defendant seeks dismissal of all Plaintiff's claims for equitable remedies for several
15 reasons. First, Defendant contends that Plaintiff lacks standing to seek injunctive relief
16 under the UCL, FAL, or CLRA because he is no longer at risk of being deceived in the
17 future. See Doc. No. 8, pg. 13. Second, Defendant argues Plaintiff cannot seek equitable
18 remedies when he has an adequate remedy at law which relies on the same factual
19 allegations. See Doc. No. 8, pg. 22. Because Plaintiff does not demonstrate standing for
20 injunctive relief, the Court will not address Defendant's argument as to whether Plaintiff
21 has adequate remedies at law. Plaintiff has indicated a desire to amend his CLRA claim to
22 include a claim for damages, which would render any such analysis premature. See Doc.
23 No. 10, pg. 20. As pled, the complaint does not include a claim for damages under the
24 CLRA or sufficiently allege why such damages would be an inadequate remedy.

#### a. <u>Plaintiff's standing to seek injunctive relief</u>

26 Defendant argues that Plaintiff lacks standing to seek injunctive relief because he is
27 no longer at risk of being deceived by the alleged "fraudulent pricing scheme." See Doc.
28 No. 8, pg. 13. Additionally, Defendant contends that their stores ceased using "Ticket"

prices over a year ago, eradicating any possibility of future harm, and rendering any injunctive relief superfluous. Id. at pg. 15. In his FAC, Plaintiff has alleged that he may shop at Defendant's retail outlet store in the future, and argues there remains a significant likelihood and immediacy of injury from Defendant's advertising scheme. See Doc. No. 7, ¶36. Plaintiff further argues that his personal knowledge of Defendant's fictitious pricing scheme does not preclude his ability to seek injunctive relief under the UCL. See Doc. No. 10, pg. 7. Moreover, Plaintiff contends that Defendant's modification from the use of "Ticket" price to "Comparable Value" price actually heightens his risk of falling victim to Defendant's fraudulent practices in the future. Id. at pg. 8.

In addition to satisfying the three general requirements for Article III standing, a plaintiff seeking injunctive relief must show that he is "realistically threatened by repetition of the violation." Gest v. Bradbury, 443 F.3d 1177, 1181 (9th Cir. 2006) (quoting Armstrong v. Davis, 275 F.3d 849, 860–61 (9th Cir. 2001)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." Lujan v. Defs. of Wildlife, 504 U.S. 555, 564 (1992) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)).

District courts in the Ninth Circuit are split as to whether an individual in Plaintiff's position, now ostensibly aware of a defendant's false advertising, has standing to seek injunctive relief. Some courts have found standing to seek equitable relief, because failing to do so would prevent federal courts from enjoining false advertising under California's consumer protection laws. See Spann v. J.C. Penney Corp., 2015 WL 1526559, at *12 (C.D. Cal. Mar. 23, 2015); Koehler v. Litehouse, Inc., 2012 WL 6217635 (N.D. Cal. 2012) ("[t]o do otherwise would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief."). Still other courts have denied standing to consumers seeking an injunction, finding that once they become aware of the false advertising that gives rise to litigation, they are unlikely to be deceived again. See i.e., Taylor v. Nike, Inc., 2017 WL 663056, at *3 (D. Or. Feb. 17, 2017) ("Ms. Taylor is now

11

aware of any false pricing scheme in which Nike might be engaged. Therefore, she cannot demonstrate 'the imminent prospect of future [in]jury' because she can no longer be deceived."); Lucas v. Jos. A. Bank Clothiers, Inc., 2015 WL 2213169, at *4 (S.D. Cal. May 11, 2015).

The Ninth Circuit recently resolved this split "in favor of plaintiffs seeking injunctive relief." Davidson v. Kimberly-Clark Corp., 873 F.3d 1103, 1115 (9th Cir. 2017). The Davidson court identified two categories of cases wherein a previously deceived consumer may have standing to seek an injunction regardless of their previous knowledge of deceptive advertising at the time of the original purchase. "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." Id. (citing i.e., Ries v. Arizona Beverages USA LLC, 287 F.R.D. 523, 527 (N.D. Cal. 2012); Lilly v. Jamba Juice Co., No. 13-cv-02998-JT, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015). "In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." Id. (citing i.e., Richardson v. L'Oreal USA, Inc., 991 F.Supp.2d 181, 194–95 (D.D.C. 2013) ("finding that 'the named plaintiffs, knowledgeable about the misrepresentations, are likely to suffer future harm in the absence of an injunction,' because they will be unable 'to rely on the [misleading] label with any confidence' and 'will have no way of knowing' whether defendants 'boost[ed] the label's veracity'").

Acknowledging that a previously deceived consumer, such as Plaintiff, may have standing to seek injunctive relief, the Court must now analyze whether Plaintiff adequately alleged an imminent or actual threat of harm. In Davidson the Plaintiff alleged that "(1) she 'continues to desire to purchase wipes that are suitable for disposable in a household toilet,' (2) she 'would purchase truly flushable wipes manufactured by [the defendant] if it were possible to determine prior to purchase if the wipes were suitable to be flushed,' (3) she

has 'no way of determining whether the representation "flushable" is in fact true,' and (4) she 'regularly visits stores ... where Defendants "flushable" wipes are sold.'" Hunter v. Nature's Way Prod., LLC, 2018 WL 340233, at *3 (S.D. Cal. Jan. 9, 2018) (quoting Davidson, 873 F.3d 1103, 1116). The Court of Appeals recognized "it [was] a close question" but held the above allegations to be sufficient. Id.

Here, the determination is much less challenging, as the complaint is unquestionably deficient in this regard. Plaintiff's sole allegation pertaining to the prospect of future harm is that he "may in the future shop at Defendant's outlet store." Doc. No. 7, ¶ 36. Plaintiff's declared intent to possibly shop at Defendant's outlet stores in the future, standing alone, is wholly insufficient to demonstrate that he is "realistically threatened by a repetition of the violation." Gest v. Bradbury, 443 F.3d 1177, 1181 (9th Cir. 2006). Plaintiff does not allege (1) that he continues to desire to purchase Wilson's Leather products, (2) that he would purchase Wilson's Leather products if it were possible to determine prior to purchase the accurate price and/or discount associated with each product, or (3) that he has no way of determining whether any future representation that Defendants might make about discounted pricing is in fact true. Even considering the change in nomenclature by Defendant, from "Ticket" price to "Comparable Value" price, Plaintiff has not "adequately alleged that [he] faces an imminent or actual threat of future harm due to [Defendant's] false advertising." Davidson, 873 F.3d 1103, 1116. Accordingly, Plaintiff lacks standing to assert claims for injunctive relief based on the allegations in the FAC, therefore this portion of Defendant's Motion to Dismiss is **GRANTED without prejudice**.

### III. Federal Rule of Civil Procedure 12(b)(6)

#### a. Rule 9(b)

Defendant argues that each of Plaintiff's claims fail under Rule 9(b) because Plaintiff failed to adequately identify the wallet which he purchased. See Doc. No. 8, pg. 19. Defendant contends that Plaintiff's allegations that he purchased a "black, tri-fold wallet with the words 'WILSONS LEATHER' stamped into the back are insufficient to identify the specific product at issue." Id. Plaintiff argues that his complaint sufficiently describes

the wallet. See Doc. No. 10, pg. 21. The Court finds that Plaintiff has met the Rule 9(b) standard by including the following in his FAC: (1) the date Plaintiff purchased the wallet; (2) the store where the wallet was purchased; (3) a description of the purchased wallet; (4) a description of the advertising that Plaintiff relied upon when purchasing the wallet; (5) pictures attached as exhibits depicting the wallets and their corresponding advertisements. This level of specificity enables Defendant to "prepare an adequate answer from the allegations." Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1400 (9th Cir. 1986); see Fecht v. Price Co., 70 F.3d 1078, 1083 (9th Cir. 1995). Furthermore, the gravamen of Plaintiff's claims concern Defendant's "deceptive pricing scheme," and not the actual wallet. The pricing scheme has been alleged with requisite specificity to inform both the Court and Defendant as to the "who, what, when, where, and how" of the alleged fraud. Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.2003). Accordingly, this portion of Defendant's Motion to Dismiss is **DENIED.**

### b. Plaintiff's claims for Restitution

In awarding restitution under the various California consumer protection laws, a court has "very broad discretion to determine an appropriate remedy as long as it is supported by the evidence and is consistent with the purpose of restoring the plaintiff the amount that the defendant wrongfully acquired." Astiana v. Kashi Co., 291 F.R.D. 493, 506 (S.D. Cal. 2013). Defendant argues that Plaintiff's FAC provides no basis for awarding restitution under the UCL, FAL, or the CLRA. See Doc. No. 8, pg. 19. Defendant contends restitution is unavailable for Plaintiff because he has not alleged a financial loss, specifically, Plaintiff must allege that the price charged for the wallet exceeded its retail value. Id. at 20. Plaintiff argues he has pled sufficient facts to support a cognizable legal theory as to the UCL, FAL, and the CLRA claims, and any discussion on restitution pursuant to those claims is premature. See Doc. No. 10, pg. 15. Plaintiff further contends that Defendant's argument relies on the flawed premise that the "cost-minus-value" method is the only permissible approach of calculating restitution. Id. at pg. 16.

As Defendant proffers, the difference in price paid for an item and the value received from that item is a proper measure of restitution, however, Defendant has cited to no case law that suggests it is the only proper measure of restitution calculation in these types of cases. See Johns v. Bayer Corp., 2012 WL 1520030, at *5 (S.D. Cal. Apr. 30, 2012) (citing In re Vioxx Class Cases, 180 Cal.App.4th 116, 131, 103 Cal.Rptr.3d 83 (2009) ("However, neither that case nor any other case relied upon by Bayer suggest that the difference in price paid and value received is *the only* proper measure of restitution."). Quite the contrary, in In re Tobacco Cases II, which Defendant relies upon, the California Appeals court acknowledged the existence of alternative measures of restitution, and only denied the restitution claim because the alternative theory was not "supported by the substantial evidence." In re Tobacco Cases II, 240 Cal. App. 4th 779, 792 (2015) (On appeal after Superior Court denied plaintiffs' prayer for restitution *after a bench trial*.).

Thus, Plaintiff is able to survive a Motion to Dismiss so long as sufficient facts are pled to support a cognizable legal theory for recovery, regardless of which theory he so chooses. See Azimpour, 2017 WL 1496255, at *9. Whether Plaintiff has the substantial evidence to support that theory "is a premature determination at the pleading stage." Id. Here, Plaintiff alleges that he would not have purchased the wallet without the misrepresentation made by Defendant and therefore seeks to obtain "damages, restitution, and other appropriate relief in the amount by which Defendant was unjustly enriched as a result of their sales of merchandise offered at a false discount." See Doc. No. 7, ¶¶ 10, 17. Similar allegations have been held sufficient to support a claim for restitution. See Russell v. Kohl's Dep't Stores, Inc., , 2015 WL 12781206, at *5 (C.D. Cal. Oct. 6, 2015) ("Even though Plaintiffs have not alleged that the price they paid exceeds the value of the merchandise they purchased, they have still alleged sufficient facts to support a claim for restitution under the UCL and FAL"); Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 989 (9th Cir. 2015) ("[I]n calculating restitution under the UCL and FAL, the focus is on the difference between what was paid and what a reasonable consumer would

15

have paid at the time of purchase without the fraudulent or omitted information."). Accordingly, this portion of Defendant's Motion to Dismiss is **DENIED.**

### c. Plaintiff's Unjust Enrichment claim

Defendant contends that Plaintiff's fourth cause of action for "Unjust Enrichment" claim must be dismissed because California does not recognize such a claim standing on its own. See Doc. No 8, pg. 21. Plaintiff does not refute this statement of the law, but rather argues that courts have the ability to construe Plaintiff's unjust enrichment allegations under a "quasi-contract" theory. See Doc. No. 10, pg. 24.

As Defendant correctly identified, no stand-alone cause of action for unjust enrichment exists under California law. See Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) (citing Durell v. Sharp Healthcare, 183 Cal.App.4th 1350, 108 Cal.Rptr.3d 682, 699 (2010); Jogani v. Superior Court, 165 Cal.App.4th 901, 81 Cal.Rptr.3d 503, 511 (2008)). This is not to mean unjust enrichment, and the underlying equitable principle the doctrine espouses, is irrelevant under California law, instead "a court may 'construe the [unjust enrichment] cause of action as a quasi-contract claim seeking restitution.'" Id. (citing Rutherford Holdings, LLC v. Plaza Del Rey, 223 Cal.App.4th 221 (2014). In Astiana, the court recognized that simple straightforward allegations, no matter the unsophistication with which they are plead, can be sufficient to state a quasi-contract cause of action. Id. ("[Defendant] had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that [defendant] was 'unjustly enriched as a result.' This straightforward statement is sufficient to state a quasi-contract cause of action.") Here, Plaintiff has alleged that he, along with members of the class, "conferred upon Defendant non-gratuitous payments for merchandise that they would have not if not for Defendant's deceptive pricing, advertising, and marketing." Doc. No. 7, ¶ 82. Additionally, Plaintiff alleged that "Defendant has been unjustly enriched in retaining the revenues derived from purchases of merchandise by Plaintiff and members of the class. . . ." Id. at ¶81. While Plaintiff has not explicitly pled a quasi-contract theory in his unjust enrichment cause of action, the Court finds the allegations sufficient, and thus

16

construes this cause of action as a quasi-contract claim for restitution. See Azimpour, 2017 WL 1496255, at *10. Accordingly, this portion of Defendant's Motion to Dismiss is **DENIED**.

## **CONCLUSION AND ORDER**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss Plaintiff's FAC is **GRANTED** in part and **DENIED** in part;
   a. Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's claims for injunctive relief **without prejudice**;
   b. Defendant's Motion to Dismiss is **DENIED** in all other respects**;**
2. To the extent that Plaintiff is able to cure the noted deficiencies, Plaintiff may file a Second Amended Complaint **within twenty-one (21) days** from the date of this Order.

**IT IS SO ORDERED.**

DATED: March 19, 2018

_____
JOHN A. HOUSTON
United States District Judge